UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| CERTAIN UNDERWRITERS AT LLOYD'S SYNDICATE 1206, et al.,<br><br>Consolidated Plaintiffs,<br><br>v.<br><br>ELDIA DIAZ-OLMO, et al.,<br><br>Consolidated Defendants.<br><br>ELDIA DIAZ-OLMO,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>MARIANO RICHIUSA, et al.,<br><br>Third-Party Defendants. | Civil No. 12-1693 (JAF)<br><br>(Consolidated with Civ. No. 12-1950) |

**OPINION AND ORDER**

This admiralty action was initiated by Plaintiffs, Certain Underwriters at Lloyd's Syndicates 1206 and 4472 ("Lloyd's") and the Puerto Rico Sailing and Navigation School, Inc., d/b/a The Boat Club ("The Boat Club") (hereinafter and collectively "Plaintiffs"), against Eldia Díaz-Olmo ("Defendant.") (Docket No. 1.) Plaintiffs allege a breach in maritime contract based on the accusation that Defendant's negligence caused the sinking of the boat that is the subject of this lawsuit. (Docket No. 15 at 4.) Plaintiffs allege that Defendant was enjoying a demise or bareboat charter at the time of the loss.

(Id.)  Lloyd's seeks $26,100 through subrogation based on the insured hull value of $24,000, plus $1,650 for salvage expenses and $450 in survey expenses.  (Docket No. 15 at 4-5.)  Plaintiffs state that "the replacement cost of the equipment is $98,000.00," thus the Boat Club seeks $74,000 based on the remainder after the $24,000 payment from Lloyd's.  (Docket No. 15 at 4-6.)  The Boat Club seeks an additional $4,950 in salvage charges "not indemnified" by Lloyd's and $650 in "post-loss storage expenses" for a total of $79,600.  (Docket No. 15 at 7.)  (Id.)  Additionally, Plaintiffs request that we award expenses, costs, interest, and attorneys' fees.  (Id.)  We note that "[a]dmiralty follows the American rule that absent a statutory provision or a contractual right, there is no legal right to attorneys' fees, and both parties must bear their own costs."  1 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW § 5-16 (5th ed. 2011).  The First Circuit has held that "a Puerto Rico rule providing for attorney's fees, although part of the substantive law of the Commonwealth, was inapplicable in an action cognizable in admiralty."  Southworth Mach. Co., Inc. v. F/V Corey Pride, 994 F.2d 37, 41 (1st Cir. 1993) (citing Templeman v. Chris Craft Corp., 770 F.2d 245, 250 (1st Cir. 1985)).

Defendant has counterclaimed and filed a third-party complaint. (Docket No. 16.) She now moves for partial summary judgment under Federal Rule of Civil Procedure 56. (Docket No. 24.)  For reasons that are not clear, Defendant is attacking only the charter issue.  We surmise that it is because she seeks to keep her claims open in the event that she could prevail in maritime tort as it relates to her counterclaim and third-party complaint.  We defer for the time being the question of whether Defendant could prevail on any maritime tort theory.  The only issue before us now is Defendant's motion for

partial summary judgment. Plaintiffs oppose the motion, Defendant responds, and Plaintiffs reply. (Docket Nos. 32; 36; 42.) We grant Defendant's motion for partial summary judgment for the following reasons.

## I.

## **Background**

Plaintiffs state that they advertised "a vessel charter through Gustazos, a web based marketing agency and reseller, for the charter price of $225.00 per day." (Docket No. 18 at 1.) Defendant states that she purchased "the rental of a 24' boat" from "Gustazos" in March of 2012. (Docket No. 16 at 8.) The "Gustazo" is described as follows: "$225 for boat rental for one day (up to 6 people) at The Boat Club – Fajardo." (Docket No. 34-1.)

Plaintiffs allege that Defendant "chartered" the vessel and "executed a Boat Rental Agreement" on May 25, 2012. (Docket No. 15 at 3.) They maintain that Defendant was provided with a "staunch and seaworthy vessel . . . which had no known or suspected safety problems or defects." (Docket No. 15 at 4.) Plaintiffs state that Defendant "secured the Vessel by the stern to a mooring located near Palomino Island," went swimming with friends to the shore, "and later returned to the boat, which was still tied to the mooring." (Id.) They allege that the boat "subsequently sank while tied to the mooring because of [Defendant's] negligent operation and lack of care." (Id.)

Jacobo García-Flecha and Luis Manuel Montero-Pagán accompanied Defendant on the boating trip. (Docket No. 16.) García-Flecha and Montero-Pagán filed an action that was consolidated with the present case. (Docket No. 19.) The Defendant states that

upon returning from the shore of Palomino Island, García-Flecha arrived at the boat shortly ahead of her and Montero-Págan. (Docket No. 16 at 12.) She claims that by the time she and Montero-Págan entered the boat, the water was over their ankles and none of the boat's systems were operational. (Id.) Defendant used her cell phone to contact the Boat Club for help. (Docket No. 16 at 13.) After the boat sank, the boaters used the mooring and an ice cooler to stay afloat. (Id.) After approximately forty-five minutes, help arrived, first from a resident of Palomino Island, then from the Boat Club. (Id.) Shortly thereafter, the Maritime Police and Sea Rescue arrived. (Id.) Defendant states that she, García-Flecha, and Montero-Pagán returned to the marina with "Manny" and "Paco" (presumably employees of the Boat Club). (Docket No. 16 at 14.) The return trip to the marina was delayed because the boat had no oil in its engine. (Docket Nos. 16, 18.) In total, there was a four-hour lapse between the time of the accident and the return to the marina. (Docket No. 16 at 15.)

The Defendant, García-Flecha, and Montero-Pagán now seek damages against the Plaintiffs and Third-Party Defendants. Defendant alleges that the boat sank due to negligent maintenance, that the duty of care was violated, and that she has suffered "severe" mental pain and anguish. (Docket No. 16 at 16-17.)

Plaintiffs sound their action in maritime contract and also in maritime tort. They claim that the "Boat Rental Agreement" amounted to a bareboat or demise charter. Plaintiffs claim that Defendant had complete control and possession of the boat at all relevant times and is, therefore, liable. (Docket No. 15 at 4-5.) Defendant claims that the

boat sank due to negligent maintenance. (Docket No. 16 at 16.) Whether the "Boat Rental Agreement" constituted a demise or bareboat charter is the sole inquiry here.

## II.

### Summary Judgment Under Rule 56

We must grant a motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" if it could be resolved in favor of either party and "material" if it potentially affects the outcome of the case. Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The movant carries the burden of establishing that there is no genuine dispute as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The movant may satisfy this burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, . . . or other materials." Fed. R. Civ. P. 56(c)(1)(A). Furthermore, to establish the absence of a genuine dispute of material fact, the movant need not produce evidence but may instead point to a lack of evidence supporting the nonmovant's case. See Fed. R. Civ. P. 56(c)(1)(B); see also Celotex, 477 U.S. at 325. "Once the moving party has made a preliminary showing that no genuine [dispute] of material fact exists, the nonmovant must produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy [dispute]." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (internal quotation marks omitted); see also Fed. R. Civ. P. 56(c)(1).

In evaluating a motion for summary judgment, we must view the record in the light most favorable to the nonmovant. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150–51 (2000). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.

## Analysis

Defendant argues that she is entitled to partial summary judgment because there was not a demise or bareboat charter in force. We agree, and dismiss all claims supported by the theory that a demise or bareboat charter existed.

The First Circuit has explained:

> Demise charters are created when "the owner of the vessel . . . completely and exclusively relinquish[es] possession, command, and navigation thereof to the demisee. [They are] therefore tantamount to, though just short of, an outright transfer of ownership. However, anything short of such a complete transfer is a time or voyage charter party or not a charter party at all."

McAleer v. Smith, 57 F.3d 109, 113 (1st Cir. 1995) (quoting Guzman v. Pichirilo, 369 U.S. 698, 699-700 (1962)). In Guzman, the Supreme Court noted:

> [T]he owner who attempts to escape his normal liability for the unseaworthiness of his vessel on the ground that he has temporarily been relieved of this obligation has the burden of establishing the facts which give rise to such relief. Thus, assuming arguendo that a demise charter party would isolate the owner from liability, the owner has the burden of showing such a charter. This burden is heavy, for courts are reluctant to find a demise when the dealings between the parties are consistent with any lesser relationship.

Guzman v. Pichirilo, 369 U.S. 698, 700 (1962) (citing Reed v. United States, 11 Wall. 591, 20 L.Ed. 220 (1871)). Based on Supreme Court and First Circuit precedent, there was no demise charter here.

The "Boat Rental Agreement" was not "tantamount to, though just short of" a complete transfer of ownership that the law requires to create a demise charter. Guzman 369 U.S. at 700. Rather, it was "short of such a complete transfer[,]" thus, "not a charter party at all." Id. Plaintiffs have not met the heavy burden required to create a demise charter because, as indicated by the record, the dealings between the parties are consistent with a lesser relationship. Plaintiffs admitted to advertising with the "Gustazos" marketing agency. (Docket No. 18 at 1.) Although Plaintiffs describe the advertisement for the sale of a "vessel charter" (id.) in their pleadings, it was described as a "boat rental" in the "Gustazo" purchased by Defendant. (Docket No. 34-1.) Similarly, there is no mention of a "charter" in the "Boat Rental Agreement." Cf. Wills v. One Off, Inc., No. 08-11086, 2010 WL 1427502, at *3 (D. Mass. Apr. 8, 2010) (finding a demise charter where agreement "expressly identifie[d] the arrangement as a 'demise' charter" and provided "that the purpose of the contract was to transfer temporary ownership" to the "Charterer.")

The First Circuit has explained: "It is black-letter law that the meaning of an unambiguous writing must be derived exclusively from within its four corners. Thus, a contracting party's professed intent cannot contradict the inexorable purport of written contractual provisions." Elliott v. S.D. Warren Co., 134 F.3d 1, 9 (1st Cir. 1998) (internal citations omitted). The court further noted that it "is the proper office of an

appellate court to affirm the entry of summary judgment when the words of a contract are so clear that 'reasonable people could not differ over their meaning.'" Id. at 10 (internal citations omitted). The "Boat Rental Agreement" is not ambiguous. It is abundantly clear from the writing that it is not a charter party. The parties are referred to as "renters," not "charterers" or "demisees." (Docket No. 24-5.) Very plainly stated on the first page is: "THIS BOAT RENTAL AGREEMENT CONSTITUTES A CONTRACT BETWEEN RENTER(S) AND OWNER(S)." (Id.) There is no mention of a charter anywhere within the document. Finally, clauses 13, 14, and 15 of the agreement, (Docket No. 24-5 at 3), clearly indicate that The Boat Club did not "completely and exclusively relinquish possession, command, and navigation" of the boat to the Defendant. Guzman, 369 U.S. at 699.

In support of their opposition to Defendant's motion for summary judgment, Plaintiffs refer to the definition of "charter" provided by Black's Law Dictionary. (Docket No. 32 at 2.) Following the definition of "charter" referenced by Plaintiffs is the definition of "bareboat charter:" "A charter under which the shipowner surrenders possession and control of the vessel to the charterer, who then succeeds to many of the shipowner's rights and obligations. The charterer, who provides the personnel, insurance, and other materials necessary to operate the vessel, is known either as a demise charterer or as an owner pro hac vice. — Also termed demise charter." Black's Law Dictionary 267 (9th ed. 2009). Applying this definition, it is clear that in this case, there was no demise or bareboat charter.

We now turn to O'Donnell v. Latham, 525 F.2d 650 (5th Cir. 1976), the case that forms the basis for much of Plaintiffs' argument. Plaintiffs are correct that O'Donnell does not control here. (Docket No. 42 at 5.) We turn to a point noted by Plaintiffs (Docket No. 32 at 5) to explain why we decline to follow O'Donnell: "Classification of the rental agreement in issue here cannot be performed with bright-line precision. It involves the imposition of principles formulated in the context of seagoing commerce onto the relatively recent phenomenon of private pleasure boat leasing." 525 F.2d at 652. O'Donnell was decided in 1976. The leasing of private pleasure boats is no longer a "relatively recent phenomenon." Id. Thus, the suggestion that O'Donnell should be applied here is not compelling.

The case law involving charter parties has not developed in a way that applies to the leasing of recreational boats. To the contrary, "[t]he charter party is the principal document of the tramp shipping industry …. Charters are usually concluded after telex communications between the parties through intermediaries called ship brokers." 2 Thomas J. Schoenbaum, ADMIRALTY AND MARITIME LAW §11-1 (5th ed. 2011). "The demise or 'bareboat' charter is essentially the lease of a ship, usually on a long-term contract, often associated with a special finance or purchase arrangement." Id. at § 11-3. That is not what happened here. It is abundantly clear that the "Boat Rental Agreement" here did not amount to a bareboat or demise charter.

## IV.

## **Conclusion**

For the foregoing reasons, we hereby **GRANT** Defendant's motion for partial summary judgment. (Docket No. 24.) We **DISMISS WITH PREJUDICE** Plaintiffs' claims supported by the theory that a demise or bareboat charter existed.

In so doing, we pause and reflect on whether there can actually be an actionable maritime tort among these parties of the kind that would fully satisfy admiralty and maritime jurisdiction under 28 U.S.C. § 1333. The First Circuit has not expressly decided whether negligent infliction of emotional distress is a cause of action in federal maritime law. Ellenwood v. Exxon Shipping Co., 984 F.2d 1270 (1st Cir. 1993). We note that courts have been hesitant to allow claims of the type Defendant alleges here. See Norfolk & Western Ry. Co. v. Ayers, 538 U.S. 135, 146 (2003) (noting that "uncabined recognition of claims for negligently inflicted emotional distress would 'hol[d] out the very real possibility of nearly infinite and unpredictable liability for defendants.'") (quoting Consolidated Rail Corporation v. Gottshall, 512 U.S. 532, 546 (1994)). However, this is not before us now, and we defer judgment on this issue for the time being.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 29th day of July, 2013.

                                                                    S/José Antonio Fusté
                                                                    JOSE ANTONIO FUSTE
                                                                    U. S. DISTRICT JUDGE